# United States Court of Appeals
# for the Fifth Circuit

───────────

No. 24-30189

───────────

United States Court of Appeals
Fifth Circuit
**FILED**
December 16, 2024
Lyle W. Cayce
Clerk

Brandi Sibley,

*Plaintiff—Appellant,*

versus

Touro LCMC Health; Greg Feirn; John Heaton, *Doctor, Chief Medical Officer*; LCMC Health, possibly *improperly named as* Touro LCMC Health; Louisiana Children's Medical Center, *improperly named as* Touro LCMC Health, *doing business as* LCMC Health,

*Defendants—Appellees.*

───────────────────────────────

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-4757

───────────────────────────────

Before Elrod, *Chief Judge,* and Oldham, and Wilson, *Circuit Judges.*
Per Curiam:[*]

 Proceeding *pro se*, Brandi Sibley brought this action against her employer, the Louisiana Children's Medical Center (LCMC), as well as LCMC's CEO Greg Feirn and its CMO John Heaton after she was denied

───────────

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30189

a religious exemption from LCMC's COVID-19 vaccination policy, at least until her fourth try. Based on LCMC's denying her first three religious-exemption requests and her subsequent suspension for noncompliance with the vaccination policy, Sibley asserts religious-discrimination and retaliation claims under Title VII, a discrimination claim under 42 U.S.C. § 1981(a)–(b), and claims for conspiracy, negligent infliction of emotional distress, and vicarious liability under Louisiana law. The district court dismissed Sibley's claims under Rule 12(b)(6) and denied her motion for leave to file an amended complaint as futile. But even if her first two requests were insufficient, at a minimum, LCMC's denial of her third religious-exemption request provides a sufficient basis for Sibley's Title VII religious-discrimination claim to survive Rule 12(b)(6) scrutiny. We therefore reverse the district court's dismissal of that claim and its denial of her motion for leave to amend her complaint as to that claim. We otherwise affirm.

## I.

According to her complaint, Sibley worked as an emergency room nurse at LCMC in New Orleans. In September 2021, LCMC adopted a vaccination policy that required all LCMC staff—including Sibley—to be vaccinated against COVID-19. The policy established procedures by which employees could request a medical or religious exemption. "To be considered for [a religious] exemption," LCMC required employees to sign a form "certify[ing] that [they] have a sincerely held religious belief that necessitates an exemption from th[e] vaccination requirement." The form also required submission of an "Individual Statement" from an employee seeking an exemption that included:

    a. An explanation, in your own words, of why you are requesting this religious exemption.
    b. A description of the religious principles that guide your objection to receipt of the COVID-19 vaccine.

No. 24-30189

    c. A statement as to whether you are opposed to all immunizations and if not, the sincerely held religious basis that prohibits receipt of the COVID-19 vaccine in particular.
    d. The approximate timeframe during which you developed the sincerely held belief that prohibits receipt of the vaccine.

The form further informed applicants that "LCMC Health may contact you for additional data regarding the basis for and scope of your request," including:

> information from third parties such as religious leaders or other participants; a letter from an authorized representative of the religious institution that you attend or literature from such institution which explains the doctrine/beliefs that prohibit immunization; other writings or sources upon which you rely in formulating sincerely held religious beliefs that prohibit immunization; and any additional document or information you are willing/able to provide . . . .[1]

Nine days after LCMC adopted its vaccination policy, Sibley signed LCMC's form and submitted her first religious-exemption request. But Sibley's request offered little insight into her religious objection to the vaccination policy, as it merely cited without explanation several legal maxims, Bible verses, and provisions of the Uniform Commercial Code. The LCMC "Religious Exemption Review Committee" (the Committee) requested more information to clarify Sibley's religious beliefs. LCMC then sent Sibley two more e-mails to inform her of impending vaccination

---

[1] LCMC did not apparently request any of this "additional data" from Sibley to substantiate her beliefs. And we do not read Sibley's complaint to challenge LCMC's ability to demand information or letters from "religious leaders or other participants" or "other writings or sources upon which [an applicant] rel[ies] in formulating sincerely held religious beliefs that prohibit immunization." *But see infra* n.3.

3

deadlines and to request a vaccination-status update. Sibley responded that she "submitted a religious exemption 23 days [prior]," her request was still unresolved, and, regardless of the Committee's decision, she would not consent to receiving a COVID-19 vaccination. LCMC denied Sibley's initial exemption request. She quickly followed with another, similar request, which was likewise denied.

Sibley submitted a third exemption request. In that one, Sibley explained that she "retain[ed] and reserve[d] all of [her] God-given rights including sole possession and sole use of all [her] biological materials which are granted to [her] by [her] Creator." She further stated that those rights included "the right to decline all attempts to access, influence and or otherwise alter any and all of [her] God given biological material and or biological systems which are unique, flawless and original in design and craftsmanship[.]" Thus, Sibley explained that she "require[d] that any and all products offered to [her] by [her] employer or workplace be both entirely retrievable from and also removable in its entirety from [her] body, person, and womanhood at the conclusion of each and every work period[.]" On November 15, 2021, LCMC denied Sibley's third request, formally suspended her for noncompliance with the vaccination policy, and gave her fourteen days to be vaccinated.

While under suspension, Sibley filed a fourth religious-exemption request. In that request, Sibley articulated that she is "a creation of the one true Creator Almighty and a follower of the Creator's laws first and foremost, and the laws of man **when they are not in conflict**." She then "declare[d] that [her] body, soul, mind and spirit belong to [her] Creator and that no person shall take possession of, force medicate, treat, inject upon or into [her] living body[.]" Sibley explained that "[t]he Holy Bible says 'the life is in the blood' and any interference with the purity of the blood is an offence to [her] wellbeing[.]" (citing DEUTERONOMY 6:1–9; MATTHEW 22:37;

4

Leviticus 17:11). Sibley asserted her belief that "[t]he body is the temple of the Holy Spirit and as such, should not be used for medical experimentation," and "we are called to protect the body and not participate in pharmacopeia," including receiving the COVID-19 vaccine. Based on this articulation of her religious belief, the Committee granted Sibley a religious exemption and lifted her suspension on November 23, 2021.

Though she eventually received a religious exemption from LCMC's COVID-19 vaccination policy, Sibley filed a religious-discrimination charge against LCMC with the Equal Employment Opportunity Commission (EEOC) in December 2021. After investigating her claim, the EEOC filed a formal charge against LCMC, and the parties participated in EEOC mediation. In September 2022, the EEOC determined that it would not pursue the charge further and gave Sibley a right-to-sue letter.

In December 2022, Sibley sued LCMC, Feirn, and Heaton in the Eastern District of Louisiana, alleging claims for religious discrimination and retaliation under Title VII, 42 U.S.C. § 2000(e)(5), discrimination under 42 U.S.C. § 1981(a)–(b), and for conspiracy, negligent infliction of emotional distress, and vicarious liability under Louisiana law. Sibley's complaint included several attachments, including the EEOC's right-to-sue letter, communications from LCMC about its vaccination policy, excerpts from LCMC's policy, and LCMC's position statement filed with the EEOC. The defendants jointly moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), attaching Sibley's four requests for a religious exemption and LCMC's COVID-19 vaccination policy—all of which Sibley referenced and relied upon in her complaint. Sibley subsequently moved for leave to file an amended complaint. The district court granted LCMC's motion to dismiss Sibley's original complaint for failure to state a claim and denied as futile Sibley's motion for leave to amend. Sibley appealed.

## II.

"We review a Rule 12(b)(6) dismissal *de novo*." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citations omitted). Though "we accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Id.* (internal quotation marks and citation omitted).

When considering a Rule 12(b)(6) motion to dismiss, "a district court generally 'must limit itself to the contents of the pleadings, including attachments thereto.'" *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). But "[t]he court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Id.* (citations omitted); *see also Favre v. Sharpe*, 117 F.4th 342, 344 n.1 (5th Cir. 2024). Here, the district court considered the attachments to both Sibley's complaint and the defendants' motion to dismiss, finding that the communications from LCMC, its vaccination policy, and Sibley's exemption requests and affidavits were referenced in and central to Sibley's complaint. We agree and likewise consider those documents.

## III.

On appeal, Sibley challenges the district court's Rule 12(b)(6) dismissal of her Title VII religious-discrimination and retaliation claims, her § 1981 claim, and her state law claims. We address each in turn.

First, Sibley appeals the dismissal of her Title VII religious-discrimination claim. To state such a claim, a plaintiff must allege that "(1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014) (quotation marks and citation omitted).

The district court dismissed Sibley's claim because her first three requests failed to "inform LCMC that she had a bona fide religious belief that conflicted with an employment requirement."[2] According to the district court, her "first three affidavits consist[ed] of largely disjointed legal maxims and statutes, bible verses, declarations, allegations against LCMC, and portions of the Nuremberg Code." Thus, the court determined that none of those requests informed LCMC of any actual conflict between Sibley's belief and LCMC's vaccination policy. For that reason, the district court concluded that Sibley's complaint failed to allege facts sufficient to support a Title VII religious discrimination claim. *See Davis*, 765 F.3d at 485.

But "construing all reasonable inferences in the complaint in the light most favorable to [Sibley]," at a minimum, Sibley's more detailed third exemption request was sufficient to substantiate that LCMC was informed of her religious belief's conflict with the vaccination requirement. *Hodge*, 90

---

[2] We read the district court's opinion as questioning only whether Sibley sufficiently alleged that LCMC was *informed* of the alleged religious conflict, not whether Sibley's belief was sincerely held. Likewise, we engage in only that limited inquiry, assuming the sincerity of Sibley's beliefs. *See DeVore v. Univ. of Ky. Bd. of Trs.*, 118 F.4th 839, 846 (6th Cir. 2024) (noting that "[t]he judicial task in assessing evidence of a religious conflict is narrow," ensuring only that "the asserted conflict is sincerely based on a *religious* belief, rather than some other motivation, and that the belief actually conflicts with a workplace policy" (internal quotation marks and citations omitted) (emphasis added)).

F.4th at 843. By signing LCMC's exemption request form, Sibley notified LCMC that she has a "sincerely held religious belief that necessitates an exemption from th[e] vaccination requirement." And her third request provided a sufficiently clear explanation of the conflict between what she believes and LCMC's policy.[3] She explained that her Creator gave her the right to bodily autonomy, accompanied by "the right to decline all attempts to access, influence and or otherwise alter any and all of [her] God given biological material and or biological systems which are unique, flawless and original in design and craftsmanship[.]" Accordingly, she "require[d] that any and all products offered to [her] by [her] employer or workplace be both entirely retrievable from and also removable in its entirety from [her] body, person, and womanhood[.]" Under the deferential Rule 12(b)(6) standard, Sibley's third exemption request, alongside her allegation that she was suspended at the same time LCMC denied it, provides a sufficient factual basis to state a Title VII religious-discrimination claim.[4] The district court thus erred in dismissing that claim at the pleadings stage.

---

[3] Sibley provided this explanation in response to LCMC's religious-exemption-request form's requirement that she do so. *See supra* 2–3 & n.1. But to the extent that LCMC's preemptive request for additional information required Sibley to substantiate her belief, it "is [at least] somewhat at odds with our usual approach of taking parties at their word regarding their own religious convictions." *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *1 n.2 (5th Cir. Feb. 17, 2022) (per curiam), *reh'g en banc denied*, 45 F.4th 877 (5th Cir. 2022); *see also Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013). While there may be room for inquiry into a particular plaintiff's sincerity in some instances, *see Davis*, 765 F.3d at 485–86, a request for extensive information to justify a party's sincere belief asks for more than the law will bear.

[4] Though the district court erred by dismissing Sibley's Title VII religious-discrimination claim against LCMC, it properly dismissed Sibley's Title VII claims against Feirn and Heaton because "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003).

Next, Sibley argues that the district court erred by dismissing her Title VII retaliation claim. "To state a claim for retaliation under Title VII, a plaintiff must show that '(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action.'" *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017) (quoting *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015)). But Sibley's complaint fails to make any causal connection between her suspension and her filing of a religious-exemption request. That is, she fails to show that she was suspended *because she filed the requests*, rather than because she refused to be vaccinated even after her requests were denied. Indeed, LCMC's granting her fourth exemption request belies the assertion that LCMC suspended Sibley because she requested an exemption. Sibley has failed to state a claim for retaliation under Title VII.

Sibley's remaining claims quickly falter. She contends that the district court erred by dismissing her § 1981 claim. But § 1981 "does not protect against religious discrimination." *McCoy v. Homestead Studio Suites Hotels*, 177 F. App'x 442, 445 n.2 (5th Cir. 2006) (per curiam) (citing *Runyon v. McCrary*, 427 U.S. 160, 167 (1976)). Because Sibley has brought no discrimination claim other than one for religious discrimination, her complaint does not state a cognizable § 1981 claim.

Similarly, the district court correctly dismissed Sibley's state law claims, for two reasons. For one, all of them are barred by Louisiana's one-year prescription period, which was not tolled by her filing an EEOC charge. *See Drury v. U.S. Army Corps of Eng'rs*, 359 F.3d 366, 368 (5th Cir. 2004).[5]

---

[5] The Louisiana Legislature has recently repealed its one-year prescription on delictual actions, or torts, and substituted it with a two-year prescription. *See* LA. CIV. CODE art. 3493.1 (2024); *Haygood v. Morrison*, 116 F.4th 439, 445 n.4 (5th Cir. 2024)

9

No. 24-30189

Beyond that, they fail on the merits. Sibley's claim for negligent infliction of emotional distress is barred by Louisiana's Worker's Compensation Law, which "precludes a tort suit against an employer for a workplace injury unless the plaintiff can show that the injury resulted from an 'intentional act.'" *Caceres v. Preload, L.L.C.*, No. 23-30354, 2023 WL 7986594, at *1 (5th Cir. Nov. 17, 2023) (per curiam) (unpublished) (citing LA. R.S. 23:1032(B)); *accord Carrier v. Grey Wolf Drilling Co.*, 776 So. 2d 439, 441–42 (La. 2001) (stating that "negligent acts . . . are covered by worker's compensation" exclusively) (quotation marks and citation omitted).

Sibley's claims for vicarious liability and conspiracy fail because they lack the requisite supporting factual allegations. To state a claim for vicarious liability, Sibley must allege a duty owed by the employer, a delegation of that duty to the employee, and a breach of duty by the employee due to the employee's own fault or lack of care. *E.g.*, *Moore v. Manns*, 732 F.3d 454, 456–57 (5th Cir. 2013) (applying Louisiana law); *see* LA. CIV. CODE art. 2320 (1996) (codifying cause of action for vicarious liability). Sibley's complaint does not allege any facts that would prove these elements of vicarious liability. Similarly, to sustain a claim for conspiracy under Louisiana law, Sibley must show that "(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result." *Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023) (applying Louisiana law) (quotation marks and citation omitted), *cert. denied*, 601 U.S. ----, 144 S. Ct. 913 (2024); *see* LA.

---

(citing TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315)). But that amendment only applies prospectively to actions arising after July 1, 2024. *Haygood*, 116 F.4th at 445 n.4 (citing TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315)).

CIV. CODE art. 2324 (1996) (codifying conspiracy cause of action). "The actionable element in a claim [for conspiracy] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part." *Ross v. Conoco, Inc.*, 828 So. 2d 546, 551–52 (La. 2002). Sibley's complaint nowhere alleges an underlying tort; it follows that her complaint fails to state a viable conspiracy claim. *See id.*

## IV.

Sibley also contends that the district court erred by denying her motion pursuant to Federal Rule of Civil Procedure 15 for leave to file an amended complaint. "We review a district court's denial of leave to amend under Rule 15(a) for an abuse of discretion." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). While "[i]t is within the district court's discretion to deny a motion to amend if it is futile," *id.* at 872–73, "where the denial of leave to amend was based solely on futility, we apply a *de novo* standard of review instead." *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125–26 (5th Cir. 2019); *see Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("An amendment is futile if it would fail to survive a Rule 12(b)(6) motion.").

In the light of our conclusion that Sibley sufficiently stated a claim for Title VII religious discrimination, it was erroneous for the district court to deny as futile leave to amend her complaint as to that claim.[6] Otherwise, the district court did not abuse its discretion by denying Sibley leave to amend. First, while Sibley sought to amend her Title VII retaliation claim, her proposed amended complaint fails for the same reasons as her original

---

[6] On remand, Sibley "may decide whether to reassert [her] motion for leave to amend" as to her religious discrimination claim. *Molzan v. Bellagreen Holdings, L.L.C.*, 112 F.4th 323, 337 (5th Cir. 2024); *see also Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 430 (5th Cir. 2021).

No. 24-30189

complaint. And her proposed amended complaint asserts two new claims—one under 42 U.S.C. § 1985(3) and another under La. Civ. Code art. 2315.[7] But neither could survive a Rule 12(b)(6) motion as pled.

"To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Jackson v. City of Hearne*, 959 F.3d 194, 200 (5th Cir. 2020) (quotation marks and citation omitted). But Sibley has not alleged any conspiracy or agreement entered into by the defendants, much less one to deprive her of equal protection of law. Thus, her proposed complaint fails to state a viable § 1985 claim. Moreover, Sibley fails to state a claim under La. Civ. Code art. 2315 because her proposed complaint does not allege that either Feirn or Heaton intentionally injured Sibley. As noted above, "Louisiana's Worker's Compensation Law precludes a tort suit against an employer for a workplace injury unless the plaintiff can show that the injury resulted from an 'intentional act.'" *Caceres*, 2023 WL 7986594, at *1 (citing La. R.S. 23:1032(B)). So Sibley's proffered claim under article 2315 fails for the same reason as does her claim for negligent infliction of emotional distress.

\*     \*     \*

Sibley alleged sufficient facts to state a Title VII religious-discrimination claim against LCMC, such that the district court erred in dismissing that claim at the pleadings stage. It follows that the district court

---

[7] Article 2315 provides, in relevant part, that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315 (2001).

improperly denied leave to amend as to that claim based on futility. But Sibley's original complaint fails to state any other claim upon which relief can be granted, and her proposed amended complaint fares no better. Therefore, the district court properly dismissed Sibley's remaining claims and otherwise denied leave to amend her complaint.

Accordingly, we REVERSE the dismissal of Sibley's Title VII religious-discrimination claim against LCMC as well as the denial of her motion for leave to amend her complaint as to that claim. We AFFIRM the other rulings of the district court and REMAND for further proceedings consistent with this opinion.